HICKSON *v.* STATE.

(*Knoxville,* September Term, 1953.)

Opinion filed July 23, 1954.

Nat Tipton, Assistant Attorney General, for the State.

Maner & McClure and George P. Balitsaris, both of Knoxville, for defendant.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiff in error was indicted for breaking into a railroad car and at the same time was indicted as an habitual criminal. Upon the trial he was found guilty of the felony charged and also of being an habitual criminal, and was sentenced under the statute to life imprisonment. The appeal is from the sentence of the habitual criminal statute.

Diligent counsel appointed by the Court to defend this man assigns as the first error that the conviction of the defendant as an habitual criminal cannot be sustained as the crime of breaking and entering a freight car is not recognized within the habitual criminal statutes, Code Ses. 11863.2 of the 1950 Supplement. This statute specifies certain felonies which are described by certain Code section numbers, including 11762, and it is assumed by counsel for plaintiff in error and for the State for the purpose of this assignment, that plaintiff in error has been convicted three separate times prior to the present conviction, and that they were offenses which are included within that statute; it is further assumed that if Code Section 11762, defining infamous crimes, does not, when properly construed, embrace this fourth offense, then he should not have been convicted of being an habitual criminal.

Counsel's insistence is that the infamy statute, enacted in 1829, Chapter 23, Section 71, and as the same is carried into the 1932 Code as Section 11762, does not specifically include the offense of breaking into a freight car, which was made an offense by the Acts of 1885, Chapter 19, and is now carried in the Code as Section 10914, as

amended by the Acts of 1941, Chapter 65; but that only burglary and felonious breaking and entering a dwelling house are included in the infamy statute; further, that the first statutory burglary statutes were enacted in 1829, Chapter 23, Sections 19 and 30, which are carried into the Code as Sections 10910 and 10912, and which make it an offense to break and enter a dwelling house by night with intent to commit a felony, or to break and enter a dwelling house by day with intent to commit a felony; further, he calls attention to the Acts of 1953, Chapter 63, by which breaking into a dwelling house by day is made burglary in the second degree. It might be noted also that Chapter 65 of the Acts of 1953 amends Section 10913, making it burglary in the third degree to break into a business house, outhouse, etc.

■ Counsel, therefore, urges that in applying the rule of strict construction of penal statutes as announced in *Richmond* v. *State,* 171 Tenn. 1, 100 S. W. (2d) 1, burglary in the infamy statute must be defined as it was at the time of the passage of the infamy statute in 1829, which was the breaking and entering of a dwelling house in the nighttime, as defined in Code Sec. 10910. That is the equivalent of saying that burglary as it appears in the infamy statute today should be given its common-law definition only.

■ There seem to be two answers to plaintiff's contentions, however. The first is that the Tennessee Code of 1932 is a comprehensive Act of the General Assembly of 1931, *Woodroof* v. *City of Nashville,* 183 Tenn. 483, 192 S. W. (2d) 1013.

Herein lies the distinction between a compilation of laws on one hand, and on the other, the enactment by the Legislature of all of the law into a Code. 82 C. J. S., Statutes, Sec. 271, p. 451, Note 72.

It would, therefore, seem inappropriate to relegate the word "burglary" to its definition in 1829. Moreover, reference to Code Secs. 10910, Notes, and 10917, discloses that under our statutes the word "burglary" is treated as a generic term covering several cognate offenses falling under Sections 10913-10916, Section 10914 being the offense involved in this case, *Cronan* v. *State,* 113 Tenn. 539, 82 S. W. 477; *Chapple* v. *State,* 124 Tenn. 105, 135 S. W. 321. Section 10917 provides that any person indicted for burglary may be convicted under either of the preceding sections of this article.

 Certainly, as a matter of statutory construction, it is well established that every part of a statute must be given some meaning, if possible. 82 C. J. S., Statutes, Sec. 346, p. 705. Looking again at the phraseology of the infamy statute, it is obvious that the offense described therein as "felonious breaking and entering a dwelling house" embraces both the common law and the statutory definition of burglary with respect to breaking and entering a dwelling house. Therefore, the use of the word "burglary" was entirely unnecessary unless it is to be given some meaning other than its common-law definition. The answer is that, as stated above, it is a generic term and includes such other cognate offenses than the breaking and entering a dwelling house as at least existed when the 1932 Code was adopted. This is consistent also with the general rule that provisions of the Code that are in pari materia must be construed together, and the construction of one, if doubtful, may be aided by a consideration of the word of, and the legislative intent indicated by the others. 50 Am. Jur. 470, sec. 456.

Finally, it is suggested that the Legislature has not expressly amended the infamy statute to include breaking

into a freight car because it is said that the law of burglary has always been for the protection of life rather than property, and the statute in question involving the breaking into a freight car is simply for the protection of the latter, that is for the protection of property.

In 9 Am. Jur. 240, Sec. 2, it is said:

"In statutory burglary the idea of offense against habitation is not so prominent. The design of modern statutes is the protection of property by inflicting upon those who break doors and locks for the purpose of stealing. The severe punishment prescribed for burglary * * *."

We do not think the fact determinative that the Legislature in 1941 amended the infamy statute by expressly including the breaking into a business house, outhouse, etc., other than a dwelling. It could have been done in an excess of precaution in order to avoid any question being raised with respect to that offense as it is now raised with respect to breaking into a freight car.

The second and third assignments arise out of the following situation. The Clerk of the Criminal Court testified from the minutes of the Court of Knox County, which showed three convictions of infamous offenses, one in the name of William Arnold, the second in the name of Will Floyd Hixon, and a third in the name of Will Hixon. The only evidence to connect the plaintiff in error by identifying him with these offenses was the testimony of the Assistant District Attorney General, who testified that while the plaintiff in error was in jail awaiting trial, he went to the third floor of the jail and talked to him, calling him over to the bars and stating to him that he was the Assistant Attorney General, and displayed to him a certain Federal Bureau of Investigation

record, being the fingerprint chart of the plaintiff in error, asked the plaintiff, "just for the record," whether or not he was the same person who had been convicted of these three offenses, and that the plaintiff answered in the affirmative. The witness stated that he had not told the plaintiff in error he would be indicted as an habitual criminal, or for what purpose the admissions were to be used, or that the statements would be used against him at a subsequent time.

Counsel relies upon what is said in *Giles* v. *State,* 185 Tenn. 429, 206 S. W. (2d) 412, and *Polk* v. *State,* 170 Tenn. 270, 94 S. W. (2d) 394, with reference to Article I, Section 9, of the Constitution, and Code Secs. 11547-11549, and 11555, 11557, providing that the accused is entitled to counsel at every stage of the proceedings and imposing the duty upon the magistrate before whom he is brought to inform him, that he may make a statement, but need not make one, with the inference that if he does make a statement, it may be used against him in a subsequent prosecution.

Undoubtedly, it is the duty of the magistrate to comply with these statutes, and his failure to do so renders the evidence of a confession inadmissible in evidence, but we do not believe that any such duty rests upon the Attorney General. There does not appear in this case anything to indicate that the confession was other than voluntary, and as suggested by the brief of the State, apart from statutory requirements, a failure to warn does not render a confession inadmissible or involuntary, but is a circumstance to be taken into account by the Judge in exercising his discretion whether to exclude the statement. 20 Am. Jur. 435, Sec. 505; 22 C. J. S., Criminal Law, Sec. 822, p. 1441, and *State* v. *Bunk,* 4 N. J. 461, 73 A. (2d) 249, 19 A. L. R. (2d) p. 1316.

■ We, therefore, find no error in the action of the Court in admitting this testimony, and the assignment is accordingly overruled, and the judgment of the lower Court affirmed.

We wish to commend the counsel who was appointed by the Court to defend this man, for his diligent efforts in his behalf.