J. M. GALLAGHER, SR., Appellee,

*v.*

G. HILTON BUTLER, Commissioner of Revenue, State of Tennessee, Appellant.

FIRST AMERICAN NATIONAL BANK, Executor of the Estate of John Oman, III, deceased, Appellees,

*v.*

G. HILTON BUTLER, Commissioner of Revenue, State of Tennessee, Appellant.

R. N. COOLIDGE, Appellee,

*v.*

ALFRED T. MACFARLAND, Commissioner of Revenue, State of Tennessee, Appellant.

J. B. FRENCH, Appellee,

*v.*

DONALD R. KING, Commissioner of Revenue, State of Tennessee, Appellant.

EDWARD Y. CHAPIN, JR., et ux., Appellees,

*v.*

G. HILTON BUTLER, Commissioner of Revenue, State of Tennessee, Appellant.

378 S.W.2d 161

(*Nashville,* December Term, 1963.)

Opinion filed April 8, 1964.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, for appellants.

WILLIAM WALLER, WALLER, LANSDEN & DORTCH, KENNETH L. ROBERTS, Nashville, of counsel, for appellees Coolidge, Gallagher, First American National Bank and others.

W. W. DAVIS, EDGERTON, McAFEE, ARMISTEAD, & DAVIS, Knoxville, for appellee French.

WM. L. TAYLOR, JR., SWAFFORD, JAHN & TAYLOR, Chattanooga, for appellees Chapin and wife.

Mr. Justice White delivered the opinion of the Court.

The Commissioner has appeal from the final decree of the chancellors in sustaining the bills to recover taxes paid under protest and assigns error.

All of these cases have been consolidated here by consent and it is agreed that one opinion may be rendered disposing of all matters. Since the facts in each case are slightly different, we find it necessary to set them out, but only in brief form.

1. Complainant Gallagher sold all of his common stock in J. M. Gallagher Company, a Tennessee corporation, a going and continuing concern, to the corporation and realized a substantial monetary gain. The Commissioner determined that the excess of the sale price of said stock over the costs thereof to Gallagher represented a distribution of earned surplus of the corporation and, therefore, taxable to Gallagher under the Hall Income Tax Law, and assessed him accordingly. The chancellor found in favor of Gallagher and with his holding we agree.

2. First American National Bank and Mrs. John Oman, III are co-executors of Mr. Oman's estate. Mr. Oman was fatally injured in an airplane accident occurring in March, 1960. At his death he owned common stock in Oman Construction Company and Southeast Tractor and Equipment Company, Tennessee corporations. Oman Construction Company collected the proceeds of life insurance policies carried on Mr. Oman's life for the purpose of providing funds to purchase his stock in the

event of his death. By agreement the co-executors sold the said stock to the corporations and realized substantial profits thereon. The Commissioner claimed that the profits came from the earned surplus of the corporations and were, therefore, distributions of such earned surplus within the meaning of T.C.A. sec. 67-2609. The chancellor held that the profits realized amounted to capital gains and were not taxable under the Act. We agree with the chancellor.

3. Mr. Coolidge owned stock in Sewanee Silica Sand Company, Inc., a Tennessee corporation. Upon liquidation of the corporation assets thereof were delivered over to Coolidge resulting in a gain to him over and above his original investment, commonly referred to as a capital gain. In the main the surplus of the Sewanee Silica Sand Company, Inc. resulted from a gain on the sale of its properties. This sale was not made by the corporation as a going concern, but only as a part of the process of liquidation.

The chancellor sustained the bill of Coolidge in part, but found the amount received by him in liquidation from the earned surplus of the corporation taxable. The bill should have been sustained in its entirety.

4. J. B. French owned stock in a Tennessee corporation. By appropriate action of its directors and stockholders the charter was surrendered and its assets turned over to French, the sole stockholder. The value of the assets was in excess of the amount paid for the stock when purchased as reflected in the earned surplus account.

The chancellor held that the surrender by French of the stock to the corporation "was simply an exchange of

his stock for the assets and constitutes a sale", and "* * * in no way constitutes a dividend derived from the stock." We agree.

The chancellor is disposing of the French case quoted from *Shields v. Williams*, 159 Tenn. 349, 364, 19 S.W.2d 261 (1929):

"The owner of a share of stock in a corporation whose corporate property is assessed is entitled, besides dividends, to his part of the corporate property when the corporation is wound up. Meanwhile, the corporate property coming to him is being taxed.

"The essence of the corporation tax cases cited is that taxation of the basic property justifies release from taxation of the ultimate right to receive such property."

5. Chapin and wife owned thirty-seven shares of the capital stock of Star Realty Company, Inc., a Tennessee corporation, ten shares of which he received as a gift from his father in July, 1934. The remaining twenty-seven shares were received by him as an inheritance from his father, who died in March, 1954. The shares received as a gift had a cost or basis to the complainant of $100.00 per share. The shares received by inheritance had a cost or basis to the complainant of $448.00 per share, as determined in an Inheritance Tax Return filed by the estate of complainant's father and accepted as correct by the then Commissioner.

In November, 1958, this corporation, by proper resolution, adopted a plan of liquidation and in execution thereof proceeded to turn over its assets to the shareholders according to their stock ownership. The par value of the

stock was $100.00 per share. The value of the assets turned over to Chapin in exchange for his stock on liquidation was in excess of the par value. Therefore, it is this excess which the Commissioner contends is taxable.

The chancellor held that under these circumstances the complainant received a capital gain and not a dividend. The memorandum of the chancellor says:

"The Court concludes that the only dividends taxable are those declared in the regular course of business of a going concern and paid either from current profits or earned surplus. Distribution to stockholders pursuant to a bona fide liquidation of the corporation are not taxable as 'dividends', but are merely the return to the stockholders of their 'capital', *Hellmich v. Hellman*, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379."

We also agree with the chancellor in this case.

The Commissioner says in his brief that the real question to be resolved in all these cases is whether, upon the liquidation of a corporation and resultant distribution of the corporate assets to shareholders thereof, or upon redemption for the purpose of retiring stock held by shareholders, the shareholder is liable for Tennessee taxation with respect to that portion of the amount distributed to him, which is in excess of his original investment in such corporation.

In considering the applicability of the tax to the facts in the several cases, we look first to the authority for the imposition of the tax.

Article 2, Section 28 of the Constitution of Tennessee provides: "The Legislature shall have power to levy a tax upon *incomes derived from stocks* and bonds that are not taxed ad valorem." (Emphasis supplied).

Pursuant to this provision the General Assembly enacted Chapter 20, Acts of 1931. Extra Session, now T.C.A. sec. 67-2601 et seq.

Section 67-2602 provides for the general rate to be "* * * levied and collected on incomes derived *by way of dividends* from stocks * * * ." (Emphasis supplied).

Section 67-2609, which the State contends is applicable herein, provides that "No distribution of capital by stock dividend, or liquidation or otherwise, shall be taxed as income; * * *." It also provides that "* * * earned surplus shall not be considered as capital, and shall be taxed as income when and in whatever manner it may be distributed * * *."

These two sections are a part of said Chapter 20, and it becomes necessary to construe them *in pari materia* in order to arrive at an intelligent understanding of the purpose and intent of the Legislature as therein expressed.

As a general proposition Code provisions *in pari materia,* as here, must be construed together, and the construction of one, if doubtful, may be aided by the consideration of the words of and the legislative intent indicated by the others. *Hickson v. State,* 196 Tenn. 659, 663, 270 S.W.2d 313 (1954).

It is the duty of this Court in construing an Act to reconcile different portions giving them a consistent meaning rather than otherwise. *Scales v. State,* 181 Tenn. 440, 181 S.W.2d 621 (1944). In so construing an Act, words may be modified, altered or supplied for the sake of consistency in order that the intent of the Legislature may be made clear.

Section 67-2609 states in plain language that distribution of capital by stock dividends, liquidation or otherwise, shall not be taxed as income. The understanding of this sentence is plain and presents no problem. As a matter of fact, if it provided otherwise it would be in conflict with T.C.A. sec. 48-211, which states that dividends may be paid to stockholders from a corporation's net earnings or from the surplus of its assets over its liabilities, including capital but not otherwise. The directors of a corporation may issue either common or preferred stock as dividends provided it has a surplus equal in value.

The real problem lies in the interpretation of the words "earned surplus shall not be considered as capital, and shall be taxed as income when and in whatever manner it may be distributed."

In *Lawrence v. MacFarland,* 209 Tenn. 376, 354 S.W.2d 78 (1962), we said that T.C.A. sec. 67-2602 is the levying statute and that T.C.A. sec. 67-2609 is an exception to the levy. We also said that the word "dividends" as used in T.C.A. sec. 67-2602 must be given its ordinary meaning and that the profit made by a corporation becomes "income" to a stockholder only when distributed to him in the form of dividends. In Lawrence, we approved the action of the trial court in concluding that pro rata distributions of gains realized by an investment company upon disposition of securities held in its (the company's) investment portfolio were dividends within the meaning of T.C.A. sec. 67-2602, regardless of the fact that such distributions were made in the form of additional shares of stock rather than in cash. In so holding, we agreed with the chancellor that the distributions were properly

subject to tax under the provisions of T.C.A. sec. 67-2601 et seq.

But the Lawrence case is distinguishable from the cases now before the Court. In Lawrence there was no transfer, either partial or complete, of the shareholders' stock to the corporation. In that case the stockholders received distributions as a result of their stock holdings, but the distributions were not accompanied by any transfer of stock from the shareholders to the corporation. But in the instant cases, the stockholders actually transferred their stock holdings to the corporations. They divested themselves of their holdings in return for the distribution made by the corporations. We can see no similarity in the two situations. Thus, while there may be language in the Lawrence case which would appear to support the State's position in the instant cases, this language must be read in light of the facts presented in Lawrence. *National Life & Accident Ins. Co. v. Eddings,* 188 Tenn. 512, 221 S.W.2d 695 (1949); *Prince v. Prince,* 205 Tenn. 451, 326 S.W.2d 908 (1959).

In disposing of these several cases we are compelled to keep in mind the narrow authority contained in Article 2, Section 28 of our Constitution, which empowers the Legislature to levy a tax on income derived from stocks.

T.C.A. sec. 67-2602 applies only to "incomes derived by way of dividends from stocks." T.C.A. sec. 67-2609 states that earned surplus shall be taxed as income when and in whatever manner it may be distributed. In order to reconcile these two sections we believe that T.C.A. sec. 67-2609 should be read as if the words "by way of dividend" had been placed by the Legislature after the word "distributed".

140

■ With the addition of the suggested phrase it seems to us that this portion of the statute becomes clear and would then read—"but (however) earned surplus shall not be considered as capital and shall be taxed as income when and in whatever manner it may be distributed by way of dividends, irrespective of when it was earned."

In *Corn v. Fort,* 170 Tenn. 377, 95 S.W.2d 621, 106 A.L.R. 647 (1936), and many other decisions of this Court, is found authority for the proposition that words may be modified, altered or supplied for the sake of consistency and in order that the intent of the statute be made clear.

■ It is a general rule based on legal and equitable principles that statutes of taxation are to be liberally construed in favor of the taxpayer and, therefore, strictly construed against the taxing authority. *Memphis Peabody Corp. v. MacFarland,* 211 Tenn. 384, 365 S.W.2d 40 (1963); *Memphis v. Bing,* 94 Tenn. 644, 30 S.W. 745 (1895); *Gulf Refining Co. v. City of Chattanooga,* 136 Tenn. 505, 190 S.W. 463 (1916); *Reynolds Tobacco Co. v. Carson,* 187 Tenn. 157, 213 S.W.2d 45 (1948).

■■ As a matter of fact, the State for a period of about thirty years has construed this particular Act against the authority to tax under circumstances similar to those appearing herein. While the State is not estopped from collecting a tax which it has not collected in the past, it is, however, a familiar rule of statutory construction, where a statute is of doubtful meaning and subject to construction, that administrative interpretations, especially where they are unchallenged over a long period of time, are accorded persuasive weight by the court and usually will be followed unless palpably erroneous. *Mur-*

*freesboro Bank & Trust Co. v. Evans,* 193 Tenn. 34, 241 S.W.2d 862 (1961); *Sims v. Carter,* 173 Tenn. 263, 116 S.W.2d 1031 (1938); *Sloan v. City of Columbia,* 144 Tenn. 197, 232 S.W. 663 (1920); *Chattanooga Plow Co. v. Hayes,* 125 Tenn. 148, 154, 140 S.W. 1068 (1911); *Cumberland Lodge, No. 8, F. & A. M.. v. City Council of Nashville,* 127 Tenn. 248, 260, 154 S.W. 1141 (1912); and *Tennessee Gas Co. v. McCanless,* 184 Tenn. 387, 390, 199 S.W.2d 108 (1947).

The construction placed upon this Act by those charged with the administration thereof, extending over the years indicated, is not palpably erroneous. In support of this conclusion we need only to look at the records before us in these cases in which three chancellors decided against the application of the tax to the facts herein, and, therefore, concurred with the prior rulings of the commissioners. Two other chancellors have ruled the same way on similar cases.

In the cases of *State ex rel. v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151 (1912), and *New England Mutual Life Ins. Co. v. Reece,* 169 Tenn. 84, 83 S.W.2d 238 (1935), the Court, speaking through Mr. Chief Justice Green in both cases, said in the Baseball Club case at 303 of 127 Tenn., at 1154 of 154 S.W.:

"A construction of a statute or the Constitution, not emanating from judicial decision, but adopted by the legislative or executive departments of the state, and long accepted by the various agencies of government and the people, will usually be accepted as correct by the courts."

In the New England Mutual Life Insurance Company case the Court referred again with approval to the above quotation and said:

"This rule has been recognized in many of our cases and has found frequent application in tax controversies in which it has been announced that the construction placed upon a statute by the officers whose duty it is to execute that statute is entitled to great consideration. * * * When such an administrative construction persists for a long period, without legislative action, the court is particularly loath to disturb that construction." 169 Tenn. at 93-94, 83 S.W.2d at 241.

Members of the bar, the accounting profession, and the general public have relied upon these rulings as being correct. To effect a change without affirmative legislative action appears to us to be inequitable and against the established policy of this State.

█ In our opinion the tax sought to be imposed does not apply to capital gains realized from the sale of stock to the corporation issuing it, or to the sale of such stock to a third party, or to a surrender and redemption of such stock, upon the dissolution of a corporation, wherein a division of the assets thereof is made between the owners of said assets, the stockholders. Gains so realized could not in our opinion be considered distributions by way of dividends within the meaning of the Act.

█ The taxing portion of the statute levies a tax against incomes derived by way of dividends only. It is not applicable to gains realized by stockholders on sales and transfers of their stocks.

█ Dividends, as that term is ordinarily used, refers to the recurrent return upon stock paid to stockholders

by a going corporation in the ordinary course of business which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock. 13 Am.Jur. Corporations, Section 645 (1938). See also *Hellmich v. Hellman,* supra.

The Commissioner does not contend that a gain made by the sale of stock to a third party, including a corporation, is taxable, but that such a gain is taxable only when sold to and redeemed by the corporation issuing it.

Dividends are profits set apart for division among stockholders. *Polish American Publishing Co. v. Wojcik,* 280 Mich. 466, 273 N.W. 771, 773 (1937) ; *Jefferson Banking Co. v. Trustees of Martin Institute,* 146 Ga. 383, 91 S.E. 463, 468 (1917) ; *Cratty v. Peoria Law Library Ass'n,* 120 Ill.App. 596 (1905) ; *People, ex rel. Pullman Co. v. Glynn,* 130 App.Div. 332, 114 N.Y.S. 460, 461 (1909) ; and *Georgia Power Co. v. Watts,* 184 Ga. 135, 190 S.E. 654, 659, 110 A.L.R. 465 (1937). So long as the profits of a corporation remain as surplus and are not set apart as dividends, stockholders have no right or authority, as a general proposition, to require the directors to pay such surplus over to them as dividends. The surplus account of the corporation increases or decreases with the fortunes of the corporation.

The Commissioner says in his brief that the statute is intended to provide for an assessment and collection of taxes upon property on which no ad valorem tax is paid by the owner or stockholder. While it is true that the stockholders ultimately own all of the assets of the corporation, the corporation itself, as a legal entity, has full title and ownership of said assets so long as they are in the possession of said corporation. The capital

stock of all corporations in Tennessee, except those within the purview of T.C.A. secs. 67-701, 67-715 and 67-901, is subject to ad valorem taxation to the corporation, but, of course, not to the shareholders.

The Commissioner says in his brief that there is no specific definition of the term "income" in the Act except, of course, the clear intendment that it contemplates only that which is derived from stocks and bonds.

The power to tax incomes is restricted to those referred to in Section 28, Article 2, and "[t]he court would be recreant to its trust, if it failed to hold the taxing power within a limitation so plain." *Evans v. McCabe,* 164 Tenn. 672, 52 S.W.2d 159, 617 (1932).

The Supreme Court of Georgia, in the case of *Oxford v. Carter,* 216 Ga. 821, 120 S.E.2d 298 (1961), said:

"* * * in the corporate field the terms 'dividends' and 'distribution of earnings' signify recurrent distributions from a continuing corporate enterprise, and not the final distribution in liquidation." 120 S.E.2d at 301.

The Court then said:

"* * * we are of the opinion that the Court of Appeals was correct in holding that the distribution of all the assets of the corporation to its stockholder in complete and final liquidation of all of his stock should be treated * * * as a sale of his stock and the entire gain computed and taxed accordingly, that is, as a capital gain * * *." 120 S.E.2d at 299.

The Supreme Court of Iowa, in *Lynch v. State Bd. of Assessment and Review,* 228 Iowa 1000, 291 N.W. 161 (1940), held that:

"The question * * * is whether the legislature, intended to include as taxable income, a liquidating dividend or distribution of assets.

* * * * * *

"In the case at bar, Lynch surrendered his stock as a consideration for his share of the assets of the corporation. He received exactly what his stock was worth.

This is not income but a capital gain.

* * * * * *

"Lynch received no distribution or dividend of any kind. What he received was merely an exchange of one form of personal property for another form of [personal] property. Dividend distributions and exchanges of property express two distinct legal ideas.

"Since the capital gains and profits arising from the sale or exchange of real or personal property are expressly excluded from taxation as income under the Iowa law, there can be no tax due, whereas in this case, it was simply a distribution of the assets of the corporation." 291 N.W. at 163-164.

The Intangibles Income Tax Act of Oregon taxes as income "dividends derived from" shares of stock, and in this respect is very similar to T.C.A. sec. 67-2602. The Supreme Court of Oregon, in the case of *Kelly v. Galloway,* 156 Or. 301, 66 P.2d 272, 68 P.2d 474 (1937), in construing the Act said:

"[I]t appears that a dividend declared and paid by a corporation in the ordinary course of its affairs while it is pursuing the business activities for which it was formed is deemed a part of the stockholder's income, as the word 'income' is defined in acts similar to ours

* * *. If, however, the corporation has abandoned its pursuits and has sold its property preparatory to terminating its existence, the sum which the stockholder receives upon surrender of his stock certificate will not be deemed a dividend but will be regarded as the sale price of his stock. * * * Our statute interpreted in the light of the above decisions employs the term 'dividend' in its ordinary and not its technical sense. * * * As ordinarily understood * * * a liquidating dividend which is paid, incidental to the conclusion of the corporation's life, is not a dividend * * * taxation is a very practical matter, and we are satisfied that practical reasons will readily be found for excluding all forms of dividends from gross income which are not declared by going concerns in the regular course of business. * * * 66 P.2d at 278.

The State of Minnesota has a statute. M.S.A. sec. 290.01, subd. 21(4), making its position very clear, viz.:

"Amounts received in liquidation shall be treated as payments in exchange for stock, and the gain or loss * * * (taxed as capital gains). No amount received in liquidation shall be taxed as the distribution of an ordinary dividend."

In the case of *First National Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007 (1948), the Court noted with approval, at page 8, the following statements made by the chancellor:

"For some reason the legislature elected not to tax the income from the bond, but instead only the income derived by way of interest on bonds; and only the dividends on stock but not all income from the purchase and sale of the stock itself." 186 Tenn. at 8, 207 S.W.2d at 1010.

"Moreover, a construction should be avoided which would operate to impair, frustrate or defeat the object of the statute, which, in the instant case, was to raise revenue, not by taxing the value of the bond or the value of stocks nor 'income' derived from dealing in such securities, but from the interest accruing thereon, i. e., total dividends on stocks and total amount of interest on bonds. This conclusion is justified by the fact that the Legislature knew that these securities were paying no *ad valorem* taxes and hence it was not unreasonable, but quite to the contrary, that they be taxed upon the total amount of revenue which they produced, to wit, dividends and interest." 186 Tenn. at 9, 207 S.W.2d at 1010.

Neither are revenue acts to be interpreted so as to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. *Sanborn v. McCanless,* 181 Tenn. 150, 163, 178 S.W. 2d 765 (1944); and other cases there cited. See also *Neuhoff Packing Co. v. City of Chattanooga,* 191 Tenn. 395, 234 S.W.2d 824 (1950); *Morton Pharmaceuticals, Inc. v. MacFarland,* 212 Tenn. 168, 368 S.W.2d 756 (1963).

If we follow the insistence of the Commissioner, this tax sought to be imposed herein could be applied to hundreds and thousands of stock transactions in which stock is surrendered to issuing corporations for various and sundry reasons upon which profits, some small and some large, may be realized. In our reasoning we believe that such a holding would create a state of anxiety, if not confusion, on the part of corporate stockholders and the office of the Commissioner of Revenue with little, if any, realization of net income from the taxes.

148

■ We are perfectly satisfied with the constructions and interpretations placed upon the sections in question by the chancellor's except insofar as the disallowance of a part of the relief sought by Coolidge, and as to this matter the action of the chancellor is modified. In all other respects, these cases are affirmed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.