# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

UNITED PHYSICIANS INSURANCE
RISK RETENTION GROUP, by and
through DOUGLAS M. SIZEMORE,
Commissioner of Commerce and Insurance
for the State of Tennessee and Liquidator
for United Physicians Risk Retention Group,

      Plaintiff/Appellant,

VS.

UNITED AMERICAN BANK OF
MEMPHIS,

      Defendant/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

February 7, 1996

Cecil W. Crowson
Appellate Court
Clerk

Davidson Chancery
No. 94-1889-III

Appeal No.
01-A-01-9503-CH-00096

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For the Plaintiff/Appellant:

William B. Hubbard
Weed, Hubbard, Berry & Doughty
Nashville, Tennessee

For the Defendant/Appellee:

Ronald Lee Gilman
Farris, Mathews, Gilman, Branan & Hellen
Memphis, Tennessee

John Knox Walkup
Gullett, Sanford, Robinson & Martin
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# OPINION

This appeal arises from the liquidation of an insolvent captive insurance company. The Commissioner of Commerce and Insurance, acting as the insurance company's liquidator, filed a petition in the Chancery Court for Davidson County seeking to avoid an $800,000 transfer made by the insurance company to pay off an outstanding bank loan. The bank moved to dismiss the commissioner's petition because the challenged transfer occurred outside of the avoidance period in Tenn. Code Ann. § 56-9-317(a)(2)(B) (1994). The trial court granted the motion, and the commissioner has appealed. We affirm the trial court's decision.

## I.

In 1989, United Physicians Association, Inc. ("United Physicians") established a captive insurance company called United Physicians Insurance Risk Retention Group ("UPI") to provide medical malpractice insurance to its members. It satisfied the statutory capitalization requirements by providing the Department of Commerce and Insurance with letters of credit in the amount of $1,000,000. Two years later, United Physicians borrowed $1,000,000 from the United American Bank of Memphis and then deposited the money with the department to replace the letters of credit.

United Physicians later reduced the balance of its United American Bank loan to $800,000. On December 19, 1991, as part of a reinsurance transaction, United Physicians caused $2,945,858 to be paid from the "L.I.O.N. Trust Account for U.P.I." to Anchorage Fire and Casualty Insurance Company ("Anchorage").[1] On the same day, Anchorage used part of the funds to retire various UPI debts, including the $800,000 United American Bank loan. In return for the payment, United American Bank assigned the United Physicians' note to Anchorage.

---

[1]United American Bank's brief points out that the parties do not agree that the funds used to pay off the United American Bank loan were UPI's funds. For the purposes of the motion to dismiss, we must assume the truth of the commissioner's allegation that the funds were, in fact, UPI's funds. *See Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (must take all well-pleaded, material factual allegations as true for purposes of motion to dismiss).

UPI's 1991 annual statement showed that it was insolvent by $764,102.[2] On March 9, 1992, the Commissioner of Commerce and Insurance placed UPI under administrative supervision and directed the company to devise a plan to correct its capital and surplus impairment within thirty days. When UPI failed to present an acceptable plan, the commissioner filed a petition in the Chancery Court for Davidson County on April 10, 1992, requesting the appointment of a receiver for the purpose of rehabilitating UPI. On May 1, 1992, the trial court entered a consent order placing UPI into receivership and appointing the commissioner as UPI's receiver for the purpose of rehabilitation.

UPI's financial condition continued to deteriorate. On June 19, 1992, the commissioner filed a petition in the trial court seeking to liquidate UPI because its financial statement showed that the company's insolvency had increased to approximately $13,400,000. On July 16, 1992, the trial court entered an order appointing the commissioner as UPI's liquidator.

On June 22, 1994, the commissioner, acting as UPI's liquidator, filed a complaint against United American Bank seeking to avoid Anchorage's $800,000 payment to the bank as a voidable preference. United American Bank moved to dismiss the complaint because the challenged payment did not occur within four months of the filing of the petition for liquidation as required by Tenn. Code Ann. § 56-9-317(a)(2)(B). The trial court granted the motion and dismissed the commissioner's complaint.

## II.

The sole issue on this appeal is whether the four-month avoidance period in Tenn. Code Ann. § 56-9-317(a)(2)(B) should be measured from the date of the filing of the petition for rehabilitation or from the date of the filing of the petition

---

[2]When more current financial information became available, UPI filed updated documents with the department showing its insolvency to be $2,264,668.

for liquidation. The commissioner asserts that it should be measured from the filing of the petition for rehabilitation, if rehabilitation is sought prior to liquidation. United American Bank argues that the statute requires the four-month avoidance period to be measured from the filing of the petition for liquidation regardless of whether rehabilitation was first sought.

## A.

Our responsibility when construing a statute is to give the fullest possible effect to the statute's purpose. *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994); *Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn. 1993). In ascertaining a statute's purpose, we must take care not to unduly restrict the statute's application or to expand its coverage beyond its intended scope. *Storey v. Bradford Furniture Co. (In re Storey),* 910 S.W.2d 857, 859 (Tenn. 1995); *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994); *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993).

The search for a statute's purpose begins with the words of the statute itself. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986). We construe these words using their natural and ordinary meaning. *State ex rel. Metro. Gov't v. Spicewood Creek Watershed Dist.*, 848 S.W.2d 60, 62 (Tenn. 1993). We also construe them in the context of the entire statute, *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295, 296 (Tenn. 1992), and in light of the statute's overall purposes. *State v. Turner,* ___ S.W.2d ___, ___ (Tenn. 1995);[3] *West Am. Ins. Co. v. Montgomery*, 861 S.W.2d 230, 231 (Tenn. 1993); *Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976). We may also construe a statute with reference to other related statutes when it is part of a group of statutes dealing with a common subject matter. *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994).

An unambiguous statute requires the courts to do nothing more than to enforce the statute as written. *Middleton v. Allegheny Elec. Co.*, 897 S.W.2d 695,

_____

[3]*State v. Turner,* App. No. 01-S-01-9502-CC-00028, slip op. at 5, 21 T.A.M. 2-2 (Tenn. Dec. 28, 1995) (Opinion designated "For Publication").

698 (Tenn. 1995); *McClain v. Henry I. Siegel Co.*, 834 S.W.2d at 296; *Neff v. Cherokee Ins. Co.*, 704 S.W.2d at 3. If, however, a statute is ambiguous or unclear, we may resort to the various rules of statutory construction to ascertain its purpose and the scope of its application. No single rule of construction is preferable to the others, and thus we should bring all applicable rules of construction to bear in order to ascertain a statute's meaning and application. *O. H. May Co. v. Anderson*, 156 Tenn. 216, 219-20, 300 S.W. 12, 14 (1927); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 27 (Tenn. Ct. App. 1991).

**B.**

The Insurers Rehabilitation and Liquidation Act, Tenn. Code Ann. §§ 56-9-101 to -510 (1994), vests broad authority in the Commissioner of Commerce and Insurance to protect the interests of insureds, claimants, creditors, and the general public. Tenn. Code Ann. § 56-9-101(d). The Act contains "a comprehensive scheme for the rehabilitation and liquidation of insurance companies," Tenn. Code Ann. § 56-9-101(d)(7), and promotes the "[e]quitable apportionment of any unavoidable loss[es]." Tenn. Code Ann. § 56-9-101(d)(4).

The Act permits the commissioner either to rehabilitate or to liquidate an insurance company when its financial condition imperils the interests of its policyholders, creditors, or the public. The commissioner has broad discretion to decide whether to rehabilitate or to liquidate an insurance company and need not attempt to rehabilitate a company before seeking to liquidate it. *See* Tenn. Code Ann. § 56-9-306(1) (1994). The commissioner must, however, obtain judicial approval to rehabilitate or to liquidate an insurance company.

If the court grants the commissioner's petition for an order of liquidation, the commissioner becomes the insurance company's "liquidator" with broad powers to wind up the business. The commissioner takes title to all the company's real and personal property. Tenn. Code Ann. § 56-9-307(a) (1994). In order to minimize the company's losses, the commissioner may (1) collect all

debts and moneys due and claims belonging to the company,[4] (2) institute, continue, or abandon lawsuits or other legal proceedings involving the company,[5] (3) institute appropriate legal proceedings against the company's officers,[6] (4) file suit to set aside fraudulent transfers,[7] and (5) file suit to avoid preferences.[8] This appeal involves a suit to avoid a preference.

Not all transactions are within a liquidator's reach. In order to be considered a preference, the transaction must occur within one year before the filing of a successful liquidation petition.[9] Only four types of transactions occurring within this period are subject to avoidance. Three types of transfers are colored with impropriety of some sort.[10] One type of transaction, the type of transaction at issue in this case, is subject to avoidance solely because of its proximity to the commencement of the liquidation proceedings.

The specific avoidance provision at issue in this case is Tenn. Code Ann. § 56-9-317(a)(2)(B) which provides that a "preference may be avoided by the liquidator if . . . [t]he transfer was made within four (4) months before the filing of the petition." There is no question that a preference occurring within four

---

[4]Tenn. Code Ann. § 56-9-310(a)(8) (1994).

[5]Tenn. Code Ann. § 56-9-310(a)(14).

[6]Tenn. Code Ann. § 56-9-310(a)(15).

[7]Tenn. Code Ann. §§ 56-9-310(a)(21), -315.

[8]Tenn. Code Ann. §§ 56-9-310(a)(21), -317.

[9]If a rehabilitation proceeding preceded the liquidation petition, the transaction must have occurred within one year before the filing of the petition for rehabilitation or within two years before the liquidation petition, whichever time is shorter. Tenn. Code Ann. § 56-9-317(a)(1).

[10]Tenn. Code Ann. § 56-9-317(a)(2)(A) (transfers made while the company is insolvent); Tenn. Code Ann. § 56-9-317(a)(2)(C) (creditors who have reasonable cause to believe that the company is insolvent or about to become insolvent); Tenn. Code Ann. § 56-9-317(a)(2)(D) (transfers to officers, certain employees and shareholders, and other persons with whom the company did not deal at arm's length).

months before the filing of a petition for liquidation is voidable. The question on this appeal is whether a preferential transaction entered into more than four months before the filing of a petition for liquidation is voidable under Tenn. Code Ann. § 56-9-317(a)(2)(B) if it is made within four months before the filing of a petition for rehabilitation. Thus, we must determine the meaning of the phrase "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B).

## C.

The proper meaning of "the petition" as it appears in Tenn. Code Ann. § 56-9-317(a)(2)(B) can best be determined by considering the phrase in three contexts. The first context is the language of Tenn. Code Ann. § 56-9-317(a) itself. The second is the broader context of all the related statutes pertaining to the rehabilitation and liquidation of failing insurance companies. The third context consists of the general purposes and goals of the Insurers Rehabilitation and Liquidation Act.

### IN THE CONTEXT OF TENN. CODE ANN. § 56-9-317(a)

The meaning of ambiguous statutory words and phrases may be illuminated by considering their relationship with associated words and phrases in the same statute or portion of a statute. *See Hammer v. Franklin Interurban Co.,* 209 Tenn. 399, 403, 354 S.W.2d 241, 242 (1962). The doctrine of *noscitur a sociis* permits courts to modify and limit subordinate words and phrases in order to harmonize them with each other and with the evident purpose of the statute. *Scopes v. State,* 154 Tenn. 105, 110, 289 S.W. 363, 364 (1927). It operates as a rule of construction for words, phrases, and sentences in very much the same way that the doctrine of *in pari materia*[11] applies to statutes involving the same subject matter. 2A Norman J. Singer, *Statutes and Statutory Construction* § 47.16 (5th ed. 1992).

---

[11] The doctrine of *in pari materia* permits the consideration of all statutes involving the same subject matter when the meaning of one of the statutes is ambiguous. *Stevens v. Linton,* 190 Tenn. 351, 354, 229 S.W.2d 510, 512 (1950).

The criteria for determining whether a transaction is a preference and whether the preference is one that may be avoided appear in Tenn. Code Ann. § 56-9-317(a). This subsection includes six references to liquidation proceedings and one reference to rehabilitation proceedings. The definition of the term "preference" in Tenn. Code Ann. § 56-9-317(a)(1) is framed chiefly in the context of a liquidation proceeding. The section immediately following, Tenn. Code Ann. § 56-9-317(a)(2), sets out the four circumstances wherein a preference "may be avoided by the liquidator." The only reference to a rehabilitation proceeding appears in Tenn. Code Ann. § 56-9-317(a)(1) in the context of defining the time within which a transaction must occur in order to be considered a preference.[12]

The general reference to "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B) should be construed in light of the entire text of Tenn. Code Ann. § 56-9-317(a). From this vantage point, it becomes evident that the commissioner may move to set aside a preference only in the context of a liquidation proceeding and that only the "liquidator" may file the petitions authorized in Tenn. Code Ann. § 56-9-317(a)(2). Therefore, the phrase "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B) can only refer to a petition for liquidation.

## IN THE CONTEXT OF THE
## INSURERS REHABILITATION AND LIQUIDATION ACT

The construction of "the petition" based solely on Tenn. Code Ann. § 56-9-317(a) is confirmed when the phrase is considered in the context of the other related statutes dealing with the rehabilitation and liquidation of insurance companies. These statutes contain two other references to transactions occurring

---

[12]A transaction will ordinarily be considered a preference if it occurs within one year before the filing of the petition for liquidation. If, however, the liquidation proceeding was preceded by a rehabilitation proceeding, then the transaction must have occurred within one year before the filing of the rehabilitation petition or within two years before the liquidation petition, whichever time is shorter. *See* Tenn. Code Ann. § 56-9-317(a)(1).

within four months of the filing of the petition for liquidation. The first appears in Tenn. Code Ann. § 56-9-317(j) which permits the liquidator to recover excess attorney's fees paid by an insurance company "within four (4) months before the filing of a successful petition for liquidation." The second reference appears in Tenn. Code Ann. § 56-9-317(k)(1) which imposes personal liability on an insurance company's officers and employees who enter into a preferential transfer "within four (4) months before the date of filing of the successful petition for liquidation."

The meaning of Tenn. Code Ann. §§ 56-9-317(j), -317(k)(1) are not in doubt. Statutes forming part of the same statutory scheme should be construed in a way that permits them to be applied uniformly. *See Coleman v. Acuff,* 569 S.W.2d 459, 461 (Tenn. 1978); *Gallagher v. Butler,* 214 Tenn. 129, 137, 378 S.W.2d 161, 164-65 (1964); *Pritchard v. Carter County Motor Co.,* 197 Tenn. 222, 224, 270 S.W.2d 642, 643 (1954). In order to construe Tenn. Code Ann. § 56-9-317(a)(2)(B) consistently with Tenn. Code Ann. §§ 56-9-317(j), -317(k)(1), the phrase "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B) must be construed to refer to a petition for liquidation.

The Act's provisions relating to fraudulent conveyances also demonstrate that the legislature understood the difference between rehabilitation and liquidation proceedings and that it intentionally drafted Tenn. Code Ann. § 56-9-317(a)(2)(B) to exclude petitions for rehabilitation. Since both rehabilitators and liquidators may set aside fraudulent transfers, the definition of "fraudulent transfer" in Tenn. Code Ann. § 56-9-315(a)(1) includes transfers made "within one (1) year prior to the filing of a successful petition for rehabilitation or liquidation under this chapter." In contrast, Tenn. Code Ann. § 56-9-317(a)(1)'s definition of "preference" includes only transactions made "within one (1) year before the filing of a successful petition for liquidation." The General Assembly could have drafted Tenn. Code Ann. § 56-9-317(a)(2)(B) to include petitions for rehabilitation had it desired to do so, but it chose language that limited the statute's reference to petitions for liquidation.

IN THE CONTEXT OF THE PURPOSES OF THE

Finally, construing "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B) to refer only to petitions for liquidation is consistent with the purposes of the Insurers Rehabilitation and Liquidation Act. The purpose of rehabilitating an insurance company is to preserve it as an on-going business.[13] A rehabilitator's authority is strictly statutory. Tenn. Code Ann. § 56-9-303(c) vests in a rehabilitator "all of the powers of the [insurance company's] directors, officers, and managers," but does not specifically empower a rehabilitator to avoid preferences. Since officers and employees of on-going insurance companies do not have the authority to avoid preferences, rehabilitators likewise do not have this authority.

Not authorizing the commissioner to avoid preferences is entirely consistent with the rehabilitator's role of preserving the on-going business. A preferential transaction is one that circumvents the statutory priority provisions thereby permitting a creditor to obtain more than its fair share of an insurance company's estate upon dissolution.[14] Since creditors of an on-going insurance company have no claims against the insurance company's "estate," rehabilitators need not concern themselves with preferences or with the priority of creditors' claims. In the absence of priority concerns, preferential transfers, by their very nature, have no relevance in a rehabilitation proceeding.

The Insurers Rehabilitation and Liquidation Act does not permit the commissioner to act simultaneously as a rehabilitator and liquidator. The entry of an order to liquidate pursuant to Tenn. Code Ann. § 56-9-307 brings the rehabilitation proceeding to an end and vests in the commissioner the expanded authority of a liquidator. The complexion of the proceeding changes from one of preservation to one of dissolution. Its two-fold goals are to wind up the

---

[13]Tenn. Code Ann. § 56-9-303(c) (1994) authorizes "such action as the rehabilitator deems necessary or appropriate to reform and revitalize the insurer."

[14]Tenn. Code Ann. § 56-9-317(a)(1) defines a preference as a transaction that has the effect of enabling "the creditor to obtain a greater percentage of [its] debt than another creditor of the same class would receive."

company's business and to disburse its remaining assets in accordance with the statutory procedures and priorities.

The first statutory mention of the power to avoid preferences appears in the delineation of a liquidator's duties in Tenn. Code Ann. § 56-9-310(a)(21). It is only in the context of a liquidation proceeding that the avoidance of preferences makes sense. The commissioner is empowered to avoid preferences only to assure that any losses remaining after the dissolution of the insurance company are apportioned equitably.[15] Avoiding preferences accomplishes this purpose by enabling the liquidator to prevent creditors from avoiding their fair share of losses.

### III.

We hold that the phrase "the petition" in Tenn. Code Ann. § 56-9-317(a)(2)(B) refers only to petitions for liquidation. Consequently for a preference to be voidable under this section, it must have been made within four months before the filing of the petition for liquidation. The transfer of $800,000 to United American Bank on December 19, 1991, is not a voidable preference under Tenn. Code Ann. § 56-9-317(a)(2)(B) because the petition for liquidation was not filed until June 19, 1992, more than seven months later. Thus, we affirm the dismissal of the commissioner's petition to avoid this transfer and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to the Commissioner of Commerce and Insurance.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____

[15]*See* Tenn. Code Ann. § 56-9-101(d)(4).

_____

BEN H. CANTRELL, JUDGE