Fidelity-Bankers Trust Co. *v.* McCanless, Commissioner
of Finance and Taxation of Tennessee.

(*Knoxville*, September Term, 1943.)

Opinion filed June 10, 1944.

Rehearing denied July 1, 1944.

WILLIAM F. BARRY, Solicitor General, and HARRY PHILLIPS, ALLISON B. HUMPHREYS, JR., and THOMAS H. MALONE, III, Assistant Attorneys General, for appellant.

EGERTON, McAFEE & CLARKE and FORREST ANDREWS, all of Knoxville, for appellee.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The original bill was filed to recover certain taxes paid under protest to defendant Commissioner by the complainant under the Tennessee Income Tax Law. The sole question presented is whether certain dividends paid to complainant as a stockholder were paid out of earnings or surplus, or whether they were paid out of capital and so constituted liquidating dividends.

After various pleadings not now material to the issues before us, the defendant answered, denying the complainant's right to recover the taxes so paid.

Complainant trustee is a stockholder in Sanford Realty Company, a Tennessee corporation, and as such trustee, received, in 1940, a dividend from said company of $3,104. Complainant is also a stockholder in the Coal Creek Mining & Manufacturing Company and received during that

same year a dividend in the sum of $1,788.75; and it is a stockholder in the Poplar Creek Coal & Iron Company and from said company received dividends in said year in the sum of $311.10.

It was alleged in the original bill that in the year 1940 the Sanford Realty Company had no accumulated surplus and no earnings for that year.

That the Coal Creek Mining & Manufacturing Company paid its dividends out of capital, as well as out of profits, paying out of profits to the complainant the sum of $1,425.04, and out of capital $363.71; that likewise the Poplar Creek Coal & Iron Company paid its dividend, $176.33 out of profits and $134.77 out of capital.

The bill seeks to recover the entire amount of income tax paid to the defendant on the dividend from the Sanford Realty Company, and that part of the tax paid to the Commissioner on the alleged capital dividend from the other two companies. The total amount of taxes sought to be recovered in the bill is $140.93.

Complainant introduced only two witnesses; the auditor of the Sanford Realty Company and the auditor for the two mining companies. The defendant introduced only his Chief Examiner for the Income Tax Unit.

On these depositions, after the argument, the Chancellor entered a decree for the complainant in the sum of $140.93, the amount of the tax paid under protest, and assessed the defendant with the costs.

From this decree the defendant Commissioner has prayed and perfected an appeal and assigned errors.

We will consider the assignments of error in the course of the opinion. It is insisted by complainant that the following regulation of the defendant Commissioner is arbitrary and unreasonable:

"Dividends paid to any person by corporations will not be recognized as liquidating dividends unless the corporation is undergoing some recognized form of liquidation."

It is further insisted that since the real estate company had to set apart a "large depreciation reserve," that its dividend was not paid from an accumulated surplus or current profits, and that as to dividends from the two mining companies, the Poplar Creek Coal & Iron Company paid $134.77 out of capital, and the Coal Creek Mining & Manufacturing Company paid out of capital $363.71, since these amounts were paid out of a "depletion reserve." It is further insisted by complainant that since the Commissioner has allowed these reserves in the collection of the excise tax that they are allowable under the collection of the income tax.

It must be borne in mind clearly, in considering the questions so presented, that the incidence of the excise tax is upon the corporation, and the incidence of the income tax is upon the stockholder. The two taxes are levied and collected under separate, distinct and independent acts of the Legislature, and distinct grants of taxing power under the Constitution.

We take judicial notice of the fact that some taxing statutes carry formulae or arbitrary rules of thumb for computation and allowance of depletion or depreciation; that when depletion and depreciation are so computed they are not in fact true reflections of the actual depletion or depreciations which have taken place.

If such allowances are fictional and not actual, they are not allowable in taxing statutes unless the statute itself expressly so provides.

We think it immaterial to the present controversy whether the Federal Government or the Commissioner made allowances under other taxing statutes, since such

allowances are not incorporated as provisions of the Hall Income Tax Law under which this tax is collectible, if it is collectible at all.

In other words, it cannot reasonably be said, that because the Commissioner has fixed the income and depreciation for the purpose of the excise tax law, that such decision would be binding on him in his decisions on the collection of the income tax from a stockholder unless the two acts contain express provisions to that effect.

■ With regard to the Commissioner's regulations as to what was, and what was not, liquidation, it is elementary that the regulation must be within the scope of the Act, and the Act within the scope of the Constitution. We think that a formal proceeding in liquidation as described in the Commissioner's regulation above quoted, and defined by his Chief Examiner, is the best and probably the conclusive evidence of liquidation, but it does not follow that it is the exclusive one. If a proper construction of the Act enlarges the regulation, of course the Act is controlling. If, as a fact, a corporation has ceased to be "a going concern" and is in process of distributing its assets to its stockholders *pro rata*, no formal court proceeding would be necessary to exempt from taxation under the Tennessee Income Tax Law, such payments as were made to stockholders from capital and not from profits or surplus.

■ The only question here presented is whether or not the complainant has, by the proof introduced, brought itself within the exemption set out in Code, section 1123.5(d), as follows:

"No distribution of capital by stock dividend, or liquidation or otherwise, shall be taxed as income; but earned surplus shall not be considered as capital, and shall be

taxed as income when and in whatever manner it may be distributed, irrespective of when it was earned."

In other words, was the entire dividend from the Realty Company and the parts of dividends from the two mining companies upon which taxes were paid under protest, actually paid out of capital as insisted by the complainant?

It is admitted that the Realty Company and the two mining companies are still "going concerns;" they are not in liquidation, formal or informal, total or partial; and there is no proof that any one of the three companies is reducing its capital investment.

The following testimony of complainant's witnesses make it abundantly clear that the depreciations and depletions set up were fictional and arbitrary and not actual or real. They were based on an agreed percentage without regard to actuality. The auditor for the two mining companies said, when asked about depletion reserve for these two companies, "It is not an arbitrary guess, I would say it was arrived at between the Department upon investigation and agreement with the taxpayer." He agreed that it was a mere estimate reached by engineers and experts, and stated that the allowance claimed had been passed by the Federal Government in the collection of its income tax. He further suggested that if a higher percentage would have passed that a higher percentage would have been claimed.

It is abundantly clear from the testimony of this witness that the cash that paid the dividends was paid out of earnings and that the reason the dividend exceeded the "available earnings," was a matter of bookkeeping and the result of setting up on the company's books an arbitrary "depletion reserve."

The other witness for the complainant, the auditor for the Realty Company, admitted during the course of his testimony "income tax law is one thing and the state law is something else." It appears from his testimony that a formula for depreciation had been agreed upon by the Realty Company and the Federal Government. By this arbitrary formula of depreciation, a building which cost the Realty Company $8,000 in 1921, would have a value for Federal tax purposes of $2,742.86 at the end of the year 1940, because the Federal Department allowed an arbitrary yearly depreciation on the building of $137.14. Obviously this mode of depreciation is a mere fictional estimate and has nothing, whatever, to do with an actual condition.

In this connection, it seems only necessary to say further that the Tennessee Income Tax Statute, as set out in Code sections 1123.1 to 1123.31, gives the Commissioner no authority, express or implied, to agree to an arbitrary or fictional method of depletion or depreciation, even where an income tax on a corporation is involved. In this case the bookkeeping methods of the corporation are immaterial and the determination of the taxability of complainant's dividends is determined by their nature as declared by the resolutions of the Boards of Directors when such dividends were declared and "accrued" first to complainant as a stockholder.

It makes no difference whether the dividends paid were paid out of current earnings or out of an actual accumulated surplus, Code, 1123.5d, *supra*, and it makes no difference whether the bookkeepers call it a part of a "reserve" or not, it was a distribution to complainant as a stockholder out of "accumulated surplus" which became a part of complainant's income as trustee. The tax falls on the stockholder when the dividend is declared by

484

the directors, Code, 1123.1 and the income then accrues to the stockholder individually.

The resolution of the Board of Directors of the corporation declaring the dividend is *prima facie* evidence of the nature of the dividend as it is evidence of the intention of the corporation so declaring it. *Gibbons* v. *Mahon*, 136 U. S., 549, 558, 10 S. Ct., 1057, 34 L. Ed., 525. The nature of the dividend is a question of fact to be determined by proof of the actual condition of the corporation's assets and liabilities.

In this case the taxpayer filed suit claiming the exemption. The Tennessee Income Tax Law, under such circumstances, will be given a strict construction in favor of the State and the burden is on complainant to prove its right to the exemption. *Sealed Power Corp.* v. *Stokes*, 174 Tenn., 493, 506, 127 S. W. (2d), 114; *Nashville Tobacco Works.* v. *City of Nashville*, 149 Tenn., 551, 558, 260 S. W., 449.

Since the resolutions of the various Boards of Directors under which the dividends were declared, are not before us, it must be inferred that they were declared as regular dividends in due course of business.

We think the complainant has failed to prove actual depletion or actual depreciation and, therefore, he has failed to prove that any part of the dividends were actual distributions of capital to stockholders, and we hold, therefore, that the defendant was justified in disallowing the exemption claimed.

It results that the decree of the Chancellor is reversed; the bill is dismissed and the complainant taxed with the costs.

GREEN, C. J., and CHAMBLISS, PREWITT, and NEIL, JJ., concur.