Annie Grigsby DOBSON,
Plaintiff–Appellant,

v.

Joe B. HUDDLESTON, Commissioner of
Revenue of the State of Tennessee,
Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

Aug. 2, 1993.

Rehearing Denied Oct. 4, 1993.

G. Michael Yopp, Gary M. Brown, Farris, Warfield & Kanaday, Nashville, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Cynthia M. Odle, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

REID, Chief Justice.

This case presents an appeal from the trial court's adjudication, on motions for summary judgment, that a distribution of cash and debentures by Shoney's, Inc. to its shareholders is subject to the state income tax. The judgment of the trial court is affirmed.

On July 25, 1988, Shoney's, Inc., a Tennessee corporation, pursuant to a resolution adopted by its board of directors, distributed to the owners of its 36,477,241 shares of outstanding stock per share $16 in cash and a Shoney's debenture in the principal amount of $4. The total amount of the distribution, designated on Shoney's financial statement as a "dividend," was approximately $729.5 million, of which approximately $583.6 million was cash. On the date of distribution, Shoney's earned surplus account was approximately $260 million. The cash distribution was funded by a $585 million bank loan. The loan agreement includes restrictions on further distributions to shareholders until the loan has been paid. The debentures were subordinated to the bank loan.

The appellant taxpayer, Mrs. Dobson, reported the entire distribution to her of $20 per share as taxable dividends, and filed a claim for a partial refund. The taxpayer claimed that the amount of the distribution in excess of the corporation's earned surplus account on the date of distribution was not subject to taxation. On cross motions for summary judgment, the trial court granted

the Commissioner's motion, based on the legal proposition that:

> The plaintiff received the dividends at issue from Shoney's, Inc., a going corporation, as a direct result of and in direct proportion to her stock ownership. The plaintiff continued to hold the same amount of stock after receipt of the dividends, leaving her in a position to continue to enjoy future returns on her stock. The dividends were thus taxable under Tennessee Code Annotated § 67–2–101, et seq, regardless of the source of immediate funding for such dividends and whether dividends funded in such a manner are expected to recur.

The taxpayer acknowledges that she received the distribution as a direct result of and in direct proportion to her stock ownership, that Shoney's is an ongoing corporation, that after the distribution she continued to hold the same amount of stock, and that she is in a position to receive future returns on her stock. She disagrees with the trial court's conclusion that the entire distribution is taxable regardless of the source of the funding. The determinative issue, as cast by the taxpayer, is that only that portion of the distribution equal to the corporation's earned surplus at the time of distribution, is subject to taxation.

The statute that imposes the tax is T.C.A. § 67–2–102 (1989), which provides as follows:

> An income tax in the amount of six percent (6%) per annum shall be levied and collected on incomes derived by way of dividends from stocks or by way of interest on bonds of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources above enumerated, except as hereafter provided.

The exception is found in T.C.A. § 67–2–104(k) (Supp.1992), the relevant portion of which provides as follows:

> No distribution of capital shall be taxed as income under this chapter, and no distribution of surplus by way of stock dividend

shall be taxable in the year such distribution is made; but all other distributions out of earned surplus shall be taxed as income when and in whatever manner made, irrespective of when such surplus was earned....

The taxing statute imposes a tax on "incomes derived by way of dividends from stocks." Since the taxing statute does not limit the tax to distributions from earned surplus, any such limitation must be found in the exception. Section 67–2–104(k) contains two limitations. It first provides that "no distribution of capital shall be taxed." The other limitation is that "no distribution of surplus by way of stock dividend, shall be taxable in the year such distribution is made." The statute concludes: "all other distributions out of earned surplus shall be taxed as income when and in whatever manner made, irrespective of when such surplus was earned." The limitation concerning distributions of capital presents no problem in this case, nor does the limitation concerning distributions through stock dividends. It is upon the provision "all other distributions out of earned surplus shall be taxed as income" that the taxpayer bases her case. The taxpayer would have the Court construe this provision to mean that *only* distributions out of *past profits* are subject to the state's income tax.

Before discussing the cases which have interpreted the relevant statutes, it should be noted that only seven months prior to the date of the distribution in this case, the Tennessee Business Corporation Act, enacted in 1986 to become effective January 1, 1988, expanded substantially the conditions under which a corporation can make distributions to its shareholders.[1] Whereas before distributions could only be paid out of earned surplus and current earnings, now, a distribution to shareholders can be made from *any source* so long as the distribution does not render the corporation insolvent. T.C.A. § 48–16–401(a), (c)(1) (1988), provides:

> (a) A board of directors may authorize and the corporation may make distributions to

---

1. Though not relevant to this case, a 1989 amendment to this section specifically acknowledges that a distribution to shareholders may be made "through the incurrence of indebtedness." 1989 Tenn.Pub.Acts 451 (codified at T.C.A. § 48–16–401(e)(2) (Supp.1992)).

its shareholders subject to restriction by the charter and the limitation in subsection (c).

. . . . . .

(c) No distribution may be made if, after giving it effect:

(1) The corporation would not be able to pay its debts as they become due in the usual course of business; ....

This statute is significantly different from its predecessor, T.C.A. § 48-1-511 (1984) (repealed effective January 1, 1988), which provided:

Dividends may be declared and paid in cash or property only out of the unreserved and unrestricted earned surplus of the corporation or out of the net earnings of the corporation of the current fiscal year and the next preceding fiscal year taken as a single period, except as otherwise provided in this part.

That statutory prohibition was recognized in *Gallagher v. Butler,* 214 Tenn. 129, 378 S.W.2d 161 (1964), in which the taxpayer was insisting that a portion of the distribution was from capital rather than earned surplus. The Court stated:

Section 67-2609 states in plain language that distribution of capital by stock dividends, liquidation or otherwise, shall not be taxed as income. The understanding of this sentence is plain and presents no problem. As a matter of fact, if it provided otherwise it would be in conflict with T.C.A. § 48-211, which states that dividends may be paid to stockholders from a corporation's net earnings or from the surplus of its assets over its liabilities, including capital but not otherwise.

*Id.* at 165. The instant case is the first to be considered by the Court in which the distribution to shareholders lawfully could be from some source other than earned surplus or current earnings.

The prior decisions of this Court do not require, as contended by the taxpayer, that distributions to shareholders made since the effective date of the Tennessee Business Corporation Act be from the corporation's earned surplus. The first case interpreting the statutes involved in this case was *Fideli-*

*ty–Bankers Trust Co. v. McCanless,* 181 Tenn. 476, 181 S.W.2d 747 (1944). That case involved distributions that the taxpayer had received with respect to stock in three different corporations. The Court stated the issue as follows:

The sole question presented is whether certain dividends paid to complainant as a stockholder were paid out of earnings or surplus, or whether they were paid out of capital and so constituted liquidating dividends.

*Id.* at 748. The Court determined that the distributions had been paid from earnings rather than capital. In making that determination, the Court found that certain deductions for depreciation and depletion that the corporations had been allowed in computing their Tennessee excise tax liability should not be allowed in determining the amount of the corporations' earnings for purposes of the tax imposed on stockholders for "incomes by way of dividends." The Court stated its conclusion in *Fidelity–Bankers Trust Co.* as follows:

It is abundantly clear from the testimony of this witness that the cash that paid the dividends was paid out of earnings.... 

. . . . .

. . . . .

It makes no difference whether the dividends paid were paid out of current earnings or out of an actual accumulated surplus, Code, 1123.5(d) [now T.C.A. § 67-2-104(k) ] and it makes no difference whether the bookkeepers call it a part of a "reserve" or not, it was a distribution to complainant as a stockholder out of "accumulated surplus" which became a part of complainant's income as trustee. The tax falls on the stockholder when the dividend is declared by the directors, Code 1123.1 [now T.C.A. § 67-2-102] and the income then accrues to the stockholder individually.

*Id.* at 749-50.

In *Lawrence v. MacFarland,* 209 Tenn. 376, 354 S.W.2d 78 (1962), the Court stated the issue as follows:

This case, for the first time, presents the question of whether or not the amounts received by owners of shares ... from regulated investment companies, which amounts to pro rata distributions of gains realized by said concern upon disposition of securities held in its portfolio (under the Federal Income regulations, commonly called capital gains) are subject to income taxation under the Hall Income Tax.

*Id.* 354 S.W.2d at 79.

The taxpayers in *Lawrence* owned shares of stock in the Massachusetts Investors Trust, which engaged in the business of buying, holding, and selling securities. The trust separated a distribution to shareholders into one portion consisting of interest and dividends on securities owned by the trust, the "income account," and another portion consisting of profits made by the trust on the sale of securities, the "principal account." The taxpayers' acknowledged that distributions by the corporation that represented interest on bonds and dividends on stock held by the Trust were subject to taxation, but contended that distributions, in the form of cash and additional shares of stock, that represented gains on sales of securities by the trust were "capital gains distributions" and not "incomes derived by way of dividends from stocks or by way of interest on bonds." In rejecting the taxpayers' position that distribution from the "principal account" was not subject to taxation because it represented a "distribution of capital," the Court made several significant findings: "the bookkeeping methods of corporations are immaterial and whether or not the fund as paid out was from capital depended upon the proof of the actual condition of the corporation's assets and liabilities"; "in our interpretation of the Act we shall look at the transactions with respect to their substantial and practical effect rather than to the form in which" they were handled; property earned by the corporation, as distinguished from property invested therein by the shareholders, and distributed to a shareholder is subject to taxation; and, distribution in the form of stock from "profits made from the sale of certain assets ... these assets not being depleted but being increased, ... regardless of what it is called,

is a dividend on these stocks and is taxable under this Act." *Id.* at 81, 82, 83.

The Court also stated,

It seems to us that when the Legislature enacted § 67–2609 [now T.C.A. § 67–2–104(k),] above quoted, and provided that no distribution of capital should be taxed they tried to amplify that by liquidation or otherwise, but when they put the exception [in,] the purpose was [to] include everything else above the original capital of the corporation as earned surplus and make it taxable. In our view of the matter that can be the only proper interpretation to come to upon a careful study of this Act.

*Id.* at 82. Of course, as will be discussed below, a "careful study of the Act," included the then statutory limitation that dividends could be paid only from earned surplus.

The other case involving an interpretation of the statutes at issue, is *Gallagher v. Butler,* in which the Court stated the issue before it as follows:

[T]he real question to be resolved in all these cases is whether, upon the liquidation of a corporation and resultant distribution of the corporate assets to shareholders thereof, or upon redemption for the purpose of retiring stock held by shareholders, the shareholder is liable for Tennessee taxation with respect to that portion of the amount distributed to him, which is in excess of his original investment in such corporation.

378 S.W.2d at 164. In *Gallagher,* the Commissioner relied upon *Lawrence* as authority for the taxation of distributions made to shareholders. Each of the five cases decided in *Gallagher* involved the redemption of the taxpayer's stock, pursuant to the liquidation and dissolution of the corporation or the purchase and retirement by the corporation of the taxpayer's stock in that corporation. In the corporate dissolution cases, all assets of the corporation were distributed pro rata to the corporation's shareholders upon the surrender of their stock. In the other *Gallagher* cases, the corporation redeemed by purchase the taxpayer's stock. In all the *Gallagher* cases, the Commissioner insisted that the amount of the distribution to each shareholder in excess of the amount paid for the

stock by the shareholder was a distribution subject to taxation. In rejecting the Commissioner's position, the Court noted that the income sought to be taxed was "capital gains realized from the sale of stock," but stated that, under the statute, gains to the shareholder on the sale of stock to the issuing corporation or to a third party "could not in our opinion be considered distributions by way of dividends within the meaning of the Act." *Id.* at 167. The Court held:

> The taxing portion of the statute levies a tax against incomes derived by way of dividends only. It is not applicable to gains realized by stockholders on sales and transfers of their stocks.

*Id.*

The Commissioner reminded the Court that the income found to be taxable in *Lawrence* was the profit on the sale of securities by the corporation. The Court distinguished the transactions in *Gallagher* from that in *Lawrence* on the form of the distribution, a redemption of stock rather than a dividend with respect to stock, without regard to the source of the distribution. The Court stated:

> In [*Lawrence* ] the stockholders received distributions as a result of their stock holdings, but the distributions were not accompanied by any transfer of stock from the shareholders to the corporation. But in the instant cases, the stockholders actually transferred their stock holdings to the corporations. They divested themselves of their holdings in return for the distribution made by the corporations.

*Id.* at 165.

The Court noted and, on the same basis, reconciled the difference in the language of T.C.A. § 67–2602 (now T.C.A. § 67–2–102) which imposed the tax, and the language of the exception contained in T.C.A. § 67–2609 (now T.C.A. § 67–2–104(k)), as follows:

> T.C.A. § 67–2602 applies only to "incomes derived by way of dividends from stocks." T.C.A. § 67–2609 states that earned surplus shall be taxed as income when and in whatever manner it may be distributed. In order to reconcile these two sections we believe that T.C.A. § 67–2609 should be read as if the words "by

way of dividends" had been placed by the Legislature after the word "distributed".
*Id.*

*Fidelity–Bankers Trust Co., Lawrence* and *Gallagher* hold that, pursuant to Sections 67–2–102 and 67–2–104(k), distributions of corporate earnings, *regardless of when earned,* made in the form of dividends are taxable; and, further, earnings distributed other than as dividends are not subject to taxation. These decisions did not address and do not support the taxpayer's insistence in the instant case, that distributions not made from past corporate earnings are free from taxation and that the definition of "dividend," within the meaning of the statute, includes only distributions that do not exceed the amount of earned surplus on the books of the corporation.

The term "dividend" is not defined in either the statute authorizing the payment of dividends or in the statute providing for the taxation of dividends. *Black's Law Dictionary* defines "dividend" as, "The payment designated by the board of directors of a corporation to be distributed pro rata among the shares outstanding." *Black's Law Dictionary* 429 (5th ed. 1979). In *Lawrence,* the Court stated that in considering whether distributions to a shareholder are taxable,

> [w]e, of course, must keep in mind that in our interpretation of the Act we shall look at the transactions with respect to their substantial and practical effect rather than to the form in which the [company] handled the matter. In doing so, we must give the word "dividends" its ordinary meaning unless the specific terms of the statute applicable to the tax specify otherwise.

354 S.W.2d at 81. In *Gallagher,* the Court approved the following definition:

> Dividends, as that term is ordinarily used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock.

378 S.W.2d at 167.

None of these definitions limit dividends to distributions from earned surplus. And, con-

trary to the taxpayer's insistence, the Court's prior decisions limiting income subject to taxation to those distributions from earned surplus, were solely a reflection of the prior *statute's* limitation of taxable distributions to earned surplus. Statements in prior decisions that dividends could be paid only from earned surplus or current earnings were only another way of saying they could not be made from capital.

Though not conclusive as to the taxpayer, Shoney's considered the distribution to be a dividend. In information delivered to the taxpayer and other Shoney's shareholders, the distribution was described as a "dividend." A note to the *pro forma* balance sheet states: "The Dividend is assumed for *pro forma* purposes to consist of $583.1 million in cash and $145.8 million aggregate principal amount of Debentures."

Prior to the instant case, this Court has not considered the taxability of a distribution funded by current borrowing, which, heretofore, was not a lawful source. As stated previously, under the Tennessee Business Corporation Act, distributions can be made to shareholders without limitation as to the source, provided that the distribution does not impair the corporation's ability to pay its debts as they become due in the usual course of its business. In this case, Shoney's financial statements, as well as its subsequent performance, indicate that the distribution, even with borrowed funds, will not render the corporation unable to pay its debts as they become due. The terms of the loan from which the cash distributions were made contemplate that the loan will be repaid from corporate earnings and, in order to protect that source of revenue, Shoney's right to make further distributions to its shareholders is restricted and the debentures are subordinated to the bank loan. The obvious result is that the distribution to Shoney's shareholders was funded by the pledge of future earnings, which, consequently, will not be available to fund future dividends until the indebtedness has been paid.

Review of Shoney's financial statements shows that taxation of the entire distribution is consistent with the State's statutory policy of taxing income derived from earnings but not the return of capital. Shoney's *pro forma* balance sheet, sent to the shareholders in connection with the distribution, shows the changes in the corporation's balance sheet that would have occurred had the distribution been made on February 14, 1988, rather than approximately four months later. (For the purpose of this analysis, the variation is not material.) The Balance Sheet shows under Current Assets an increase in cash in the amount of the bank loan, $585 million, and a corresponding increase in Long-term Debt. Under Shareholders Equity, earned surplus decreased from approximately $250.6 million to a deficit of approximately $431.4 million. This deficit will be eliminated upon payment of the bank loan from corporate earnings, scheduled to be paid in full in 1994. The corporate secretary of Shoney's explained how the corporation was able to borrow the funds needed to make the distribution:

> The cash portion of the Recapitalization distribution was financed totally through bank financing. Shoney's was able to borrow these monies and make the recapitalization distribution, basically, because it had what would often be termed a "revaluation surplus." All this means is that the assets of Shoney's had appreciated over the years in value over what originally was paid for them. The assets were carried on the books at lower (historical values). Shoney's assets, however, were appraised in 1988 and determined to be worth approximately $729.5 million. Shoney's was able to borrow against this increased value of its assets (notwithstanding the fact they were carried on the books at lower values). The borrowings generated cash which funded the cash portion of the recapitalization distribution.

The *pro forma* balance sheet shows total assets of $426.2 million, which is $303.3 million less than the appraised value of $729.5 million. Consequently, the actual value of the shareholders' equity in the corporation was much greater than the amount of earned surplus shown on the balance sheet. According to the corporate secretary, the value of the shareholders' equity was substantially equal to the amount of the distribution. He stated in his affidavit:

Effective July 25, 1988, Shoney's engaged in what is referred to as a leveraged recapitalization. Simply stated, a leveraged recapitalization is a special distribution to a company's shareholders in which the shareholders equity of the company is literally transferred to the shareholders.

The necessary conclusion is that the distribution was made possible by the appreciation in value of Shoney's assets, and the source of the funds to make the distribution was debt. Indeed, since the distribution in 1988, earnings in the usual course of the corporation's business, rather than being available for distribution to shareholders, have been used to retire the debt.

The distribution meets the critical test stated in *Lawrence:*

> Whatever they were called by the Trust does not concern the taxing authorities. The only matter as far as the statute is concerned "is that complainants received certain payments on account of their ownership of shares in a business concern, and that complainants' right to such payments did not represent to complainants a return of the capital originally invested by complainants in such shares."

354 S.W.2d at 81. As the Court stated in *Lawrence*, the source of the funds (except, of course, capital), used to make the distribution is immaterial. This distribution in its entirety was a dividend within the meaning of the taxing statute which imposes the tax on "incomes derived by way of dividends from stock." [2]

■ The taxpayer contends that even if the distribution of cash and debentures constitute a dividend within the meaning of the statute, the value of the debentures is not subject to taxation until they are paid. The taxpayer relies upon Department of Revenue Rule 1320–3–2.01(1), which provides:

> Income is considered to be received for the purpose of the law when:
>
> (a) It is actually paid in cash;
>
> (b) Check or other negotiable instrument, or equivalent, is mailed to taxpayer, regardless of date received;
>
> (c) When credited upon the books of a bank, banking institution, broker or any agent of the taxpayer;
>
> (d) When payment is made in merchandise or other commodities of intrinsic value.

The parties stipulated that the debentures can be bought and sold and that Shoney's maintains a transfer register for the debentures. The provisions of the taxing statute are broader than the particular forms of distribution set forth in the Rule. There is no provision in the statute that taxable dividends are limited to cash. The taxpayer, by reliance upon the Rule, appears to acknowledge that negotiable instruments, the "equivalent" of negotiable instruments, "merchandise," and "commodities of intrinsic value" are taxable. The debentures, which can be converted into cash immediately, obviously are dividends under the general language of the statute.

The taxpayer would have the Court rely upon federal tax law principles for the interpretation of the state income tax.[3] Such reliance would be inappropriate, first, because the issue is controlled by the plain meaning of the statutes and prior decisions of the Court and, also, because the state's statutory scheme of taxation is radically different from that of the federal government, and reliance upon federal principles would

---

**2.** The dissent misapprehends the issue in this case. The issue is not whether the dividends "were paid out of earnings or surplus, or whether they were paid out of capital." Dissent at p. 399. The dividends were not paid out of either earnings, surplus, or capital. They were paid from debt, a business practice made possible by the Tennessee Business Corporation Act. Because of this fundamental error, the dissent does not focus on the issue presented in the case. The answer to all three rhetorical questions in the dissent are the same—all distributions by way of dividends, except the return of capital.

**3.** The dissent's suggestion that this Court construe the statutes to "make Tennessee's taxation of corporate dividends consistent with the treatment provided by the Internal Revenue Code and by other states that impose income taxes," indicates a disturbing inclination to disregard clear precedent and policy regarding taxation. The Court could as well, and upon the same lack of authority, adopt the entire Internal Revenue Code as the tax law in Tennessee.

defeat the intent and purpose of the state statutes. *See e.g., Lawrence v. MacFarland,* 354 S.W.2d at 82, *First National Bank v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007, 1009 (Tenn.1948); *Fidelity-Bankers Trust Co. v. McCanless,* 181 S.W.2d at 749.

The judgment of the trial court is affirmed.

Costs are taxed against the appellant.

DAUGHTREY and ANDERSON, JJ., concur.

DROWOTA, J., dissenting.

O'BRIEN, J., not participating.

DROWOTA, Justice, dissenting.

I respectfully dissent.

This is a tax case. It is governed by Chapter 2 of Title 67 of Tennessee Code Annotated (commonly known as the "Hall Income Tax Act"), particularly sections 67–2–102 and 67–2–104(k) thereof. Contrary to the impression left from reading the majority's opinion, this tax case is not governed by the Tennessee Business Corporation Act, which became effective in 1988.

The primary issue before the Court in this case is the same issue that was before the Court in *Fidelity–Bankers Trust Co. v. McCanless,* 181 Tenn. 476, 181 S.W.2d 747 (1944). The Court stated that issue as follows:

> "The sole question presented is whether certain dividends paid to the complainant as a stockholder were paid out of earnings or surplus, or whether they were paid out of capital ..."

181 S.W.2d 747, at 748.

This Court stated in *Lawrence v. MacFarland,* 209 Tenn. 376, 354 S.W.2d 78 (Tenn. 1962), that the determination whether a distribution is from profits (and thus taxable) or from capital (and thus not taxable) is made by reference to the distributing corporation's activities. The Court said:

> "*Whether* or not *the distribution* made by dividends *is from capital or profits is determined, of course, from the standpoint of the corporation making the distribution* rather from the standpoint of the stockholder receiving the same. The profits, of

course, that the stockholder receives only become income of the stockholders when they are distributed as dividends (Emphasis added.)

354 S.W.2d 78, at 81.

The fact that the source of the cash that was distributed by Shoney's, Inc. was a loan to the corporation is irrelevant in determining whether the distribution was paid from earned surplus. As this Court stated in *Lawrence v. MacFarland, supra:*

> "It was the intention of the Legislature in enacting this law, the Hall Income Tax Law, to tax the total amount of revenue produced by stocks and bonds and that in passing the law the *Legislature clearly did not intend* in the administration of the law *that the administrators thereof have the burden of tracing dividends to the source*—the contrary is true." (Emphasis added.) 354 S.W.2d 78, at 80.

Our previous decisions have recognized that "earned surplus" is a measure of a corporation's cumulative net profits, less its prior distributions out of same. The Court has not, however, undertaken to provide a precise formula for quantifying the amount of a corporation's earned surplus.

The majority dismisses the holdings of this Court's prior decisions dealing with the taxation of dividends under the Hall Income Tax, apparently under the illusion that the 1988 enactment of the Tennessee Business Corporation Act, which changed Tennessee's corporate law, effected amendments to this state's tax statutes. That misunderstanding is reflected in the following statement in the majority opinion:

> "And, contrary to the taxpayer's insistence, the Court's prior decisions (under the Hall Income Tax Act) limiting income subject to taxation to those distributions from earned surplus, were solely a reflection of the prior *statute's* limitation of taxable distributions to earned surplus." (Emphasis in original.)

The precursors of T.C.A. §§ 67–2–102 and 67–2–104(k) were included in the Hall Income Tax Act when it was adopted by the General Assembly in 1931. The provisions of

these tax statutes have not been modified in a manner that is pertinent to the issues before the Court since they were enacted.

The majority makes much of the fact that the distribution from Shoney's, Inc. to Annie Grigsby Dobson was "a direct result of and in direct proportion to her stock ownership, that Shoney's is an ongoing corporation, that after the distribution she continued to hold the same amount of stock, and that she is in a position to receive future returns on her stock." These facts merely establish that the distribution was with respect to her stock (and thus subject to tax to the extent the distribution was from "earned surplus"), rather than in exchange for her stock. Distributions in exchange for stock are not subject to the Hall Income Tax on dividends, without regard to the amount of the distributing corporation's earned surplus. *Gallagher v. Butler*, 214 Tenn. 129, 378 S.W.2d 161 (1964).

The majority's disposition of this particular case is clear, but the implication for future cases involving the taxation of dividends under the Hall Income Tax Act is not. Has the majority held that all distributions with respect to stock are taxable? Are all distributions that are authorized under the Tennessee Business Corporation Act taxable? Are distributions taxable only to the extent they are attributable to earned surplus, but with earned surplus being computed by taking into account hypothetical sales of corporate assets at imaginary prices? The majority's answer to these questions—"all distributions by way of dividends, except the return of capital"—illustrates the confusion that follows from deciding a tax case by using an inapplicable body of law.

I would abide by this Court's earlier decisions and hold that a distribution with respect to stock constitutes "incomes derived by way of dividends from stocks" for purposes of T.C.A. § 67–2–102 only to the extent that the distribution is "out of earned surplus" under T.C.A. § 67–2–104(k). For purposes of the Hall Income Tax, I would equate a corporation's earned surplus with its accumulated and current "earnings and profits" for federal income tax purposes. This would make Tennessee's taxation of corporate divi-dends consistent with the treatment provided by the Internal Revenue Code and by other states that impose income taxes.