# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 21, 2014 Session

## WILLIAM E. CHERRY ET AL. v. REAGAN FARR, COMMISSIONER OF THE DEPARTMENT OF REVENUE FOR THE STATE OF TENNESSEE

**Appeal from the Chancery Court for Williamson County**
**No. 34048     Robbie T. Beal, Judge**

---

### No. M2013-01823-COA-R3-CV - Filed April 15, 2014

---

Plaintiffs filed suit to recover income taxes paid under protest pursuant to Tennessee's Hall Income Tax. At issue is a "Special Dividend" Plaintiffs received that was classified by the corporation for income tax purposes as a return of "paid-in capital." Plaintiffs contend the Special Dividend was exempt because the Hall Income Tax states, in pertinent part, that "no distribution of capital shall be taxed as income under this chapter, and no distribution of surplus by way of stock dividend shall be taxable in the year such distribution is made; but all other distributions out of earned surplus shall be taxed as income when and in whatever manner made, regardless of when such surplus was earned[.]" Tenn. Code Ann. § 67-2-104(e)(7) (2011). The trial court ruled in favor of Plaintiffs based upon a finding that "[t]he Special Dividend was not a leveraged dividend and as such the reduction in book value could have only come through a return of capital distribution." We have determined the mere fact the dividend was not a leveraged dividend is not sufficient to prove the dividend was exempt from the Tennessee Hall Income Tax. To qualify for the exemption, Plaintiffs had the burden to prove the Special Dividend was paid out of capital. *See* Tenn. Code Ann. § 67-2-104(e)(7). We, therefore, reverse and remand for entry of judgment in favor of the Department of Revenue and for other proceedings consistent with this opinion.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and BEN H. CANTRELL, SR. J. joined.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Brad H. Buchanan, Senior Counsel, Nashville, Tennessee, for the appellant, Reagan Farr, Commissioner of the Department of Revenue for the State of Tennessee.

David J. Callahan, III, Nashville, Tennessee, for the appellees, William E. Cherry and Anne. W. Cherry.

**OPINION**

William E. Cherry and Anne W. Cherry ("Plaintiffs") own common shares in Capstead Mortgage Corporation ("Capstead"), a real estate investment trust that invests in real estate-related assets, including residential mortgage-backed securities issued by government-sponsored agencies. At all times material to this action, the corporation had two general classes of stock, preferred and common, and the preferred shares of stock had a right to convert to common shares.

Pursuant to a resolution adopted by its board of directors, Capstead paid a cash distribution of $7.30 per share to its common shareholders on June 29, 2001, which the company classified as a "Special Dividend." The total amount of the dividend to the common shareholders was $201,236,000; the dividend was debited as "paid-in capital" on Capstead's audited financial statements.

In a contemporaneous but independent action, Capstead also effected a two-for-one reverse-stock split. This resulted in a retirement of all common stock and the re-issuance of one common share in exchange for each two common shares retired. As a consequence of the reverse-stock split, the number of common shares issued and outstanding was reduced by half, with a corresponding increase in the share price times two.[1] Because the distribution of the Special Dividend would significantly reduce the market value of each share, the purpose of the reverse-stock split, as explained by the board of directors, was to maintain the market price of its common stock in the mid-teens, at approximately $14 to $15 per share, and avoid a decline below $10 per share, which the board stated may diminish the marketability and, thus, the value of Capstead's stock.

In an additional action that was contemporaneous with and contractually required by the reverse-stock split, Capstead adjusted the conversion ratio applicable to its preferred shareholders. As stated by the board of directors, Capstead was contractually required to adjust the conversion ratio whenever a distribution to common stockholders was made in excess of current earnings in order to protect the conversion rights of the preferred shareholders and their proportionate share of corporate equity.

---

[1]As both parties acknowledge, due to the reverse-stock split, the Special Dividend can be valued at a pre-split price of $7.30 per common share or a post-split price of $14.60 per common share.

Plaintiffs received $671,593.28 from the 2001 Special Dividend. At the end of the 2001 tax year, Plaintiffs received a 2001 investment report from Capstead that, *inter alia*, characterized the Special Dividend as "nontaxable distributions for federal purposes." Plaintiffs timely filed their 2001 Tennessee Individual Income Tax Return on which they listed the Special Dividend from Capstead as "nontaxable dividends."

Following an audit by the Tennessee Department of Revenue in 2005, Plaintiffs received an Income Tax Audit Report advising that the Special Dividend had been included in Plaintiffs' 2001 tax base. The notice explained that dividends on stock are taxable pursuant to the Tennessee Hall Income Tax, codified at Tenn. Code Ann. § 67-2-102 (2011), which provides:

> An income tax in the amount of six percent (6%) per annum shall be levied and collected on incomes derived by way of dividends from stocks or by way of interest on bonds of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources enumerated in this section, except as otherwise provided in this chapter.

Plaintiffs paid the tax and interest specified in the notice under protest on December 28, 2006. On May 11, 2007, Plaintiffs filed a claim for a refund, asserting that the Special Dividend was subject to the distribution-of-capital exemption, which provides as follows:

> [N]o distribution of capital shall be taxed as income under this chapter, and no distribution of surplus by way of stock dividend shall be taxable in the year such distribution is made; but all other distributions out of earned surplus shall be taxed as income when and in whatever manner made, regardless of when such surplus was earned[.]

Tenn. Code Ann. § 67-2-104(e)(7) (2011).

After the Commissioner denied the claim, Plaintiffs timely filed this action to challenge the imposition of the Hall income tax on $644,676 of the Special Dividend. The amount of the refund at issue is $56,434.33. The Commissioner filed an answer.

After conducting discovery, the parties agreed that no material facts were in dispute; thus, both parties filed cross-motions for summary judgment. The Chancellor granted Plaintiffs' motion for summary judgment and the Commissioner appeals.

**ANALYSIS**

The parties concede that no factual disputes exist and the sole issue presented is whether the Special Dividend falls within an exemption, specifically, the distribution-of-capital exemption under the Tennessee Hall Income Tax in Tennessee Code Annotated § 67-2-104(e)(7).[2]

"Exemptions in tax statutes are strictly construed against the taxpayer and the burden is on the taxpayer to establish his exemption." *United Canners, Inc. v. King*, 696 S.W.2d 525, 527 (Tenn. 1985); *Fidelity-Bankers Trust Co. v. McCanless*, 181 S.W.2d 747, 750 (Tenn. 1944). Furthermore, "[e]very presumption is against the exemption and a well-founded doubt is fatal to the claim." *United Canners, Inc.*, 696 S.W.2d at 527; *Fidelity-Bankers Trust Co.*, 181 S.W.2d at 750. Thus, when a taxpayer files suit claiming an exemption, "the Tennessee Income Tax Law will be given a strict construction in favor of the State and th[e] burden is on complainant to prove its right to the exemption." *Fidelity-Bankers Trust Co.*, 181 S.W.2d at 750. In this case, it is undisputed that Plaintiffs bear the burden of demonstrating the Special Dividend was exempt; in order to show this exemption, the taxpayers must prove that the Special Dividend was paid out of capital.

When construing the taxability of corporate distributions, the court is to consider the substantial and practical effect upon the corporation rather than the form in which the company handled the matter. *Lawrence v. MacFarland*, 354 S.W.2d 78, 81 (Tenn. 1962). Whether the distribution is made from capital or profits is determined from the standpoint of the corporation and not the stockholder. *Id.* "The resolution of the board of directors of the corporation declaring the dividend is *prima facie* evidence of the nature of the dividend as it is evidence of the intention of the corporation so declaring it." *Fidelity-Bankers Trust Co. v. McCanless*, 181 S.W.2d 747, 750 (Tenn. 1944). However, "[t]he nature of the

---

[2]Whether the Special Dividend is considered a return of capital for federal income tax purposes and exempt from federal taxable income is neither relevant nor determinative of whether it is exempt under Tennessee's Hall Income Tax. *Dobson v. Huddleston*, 863 S.W.2d 392, 398-99 (Tenn. 1993). As the court explained in *Dobson*:

> [t]he taxpayer would have the Court rely upon federal tax law principles for the interpretation of the state income tax. Such reliance would be inappropriate, first, because the issue is controlled by the plain meaning of the statutes and prior decisions of this Court and, also, because the state's statutory scheme of taxation is radically different from that of the federal government, and reliance upon federal principles would defeat the intent and purposes of the state statutes.

*Id.*

dividend is a question of fact to be determined by proof of the actual condition of the corporation's assets and liabilities." *Id.*

Plaintiffs contend they have presented *prima facie* evidence, in accordance with *Fidelity-Bankers Trust Co.*, in support of their position that the nature of the dividend was a return of capital. In April 2001, the board of directors held their annual meeting and decided to distribute "excess under-utilized capital" in the form of a Special Dividend from $200 million in cash the company had on hand as of that date. This distribution was identified as a "Special Dividend" on Capstead's audited financial statements and debited as "paid-in capital." In addition, Plaintiffs assert that they have demonstrated the substantial and material impact that the Special Dividend had on Capstead; specifically, it reduced Capstead's asset holdings. Plaintiffs rely on the financial records of Capstead as audited by Ernst & Young to show that during 2001, Capstead's assets, which included mortgage securities and other investments, decreased from approximately $5.4 billion to approximately $3.5 billion caused, in part, by a significant increase in mortgage prepayments. Thus, the asset holdings of Capstead decreased by approximately $1.9 billion in 2001, the year in which the Special Dividend was made. Moreover, Capstead began 2001 with an accumulated deficit, but subsequently made a net income of approximately $100 million which the company distributed to its common and preferred shareholders as ordinary dividends in addition to the Special Dividend. Further, the financial statements show that Capstead's liabilities decreased by over $2.5 billion from the end of 2000 to the end of 2001. Based on the foregoing, Plaintiffs assert they demonstrated the Special Dividend could only have been paid out of capital.

Conversely, the Commissioner argues that the Special Dividend fits within the Tennessee Supreme Court's definition of a dividend; therefore, it is taxable under the Hall Income Tax. Specifically, the Commissioner asserts that Plaintiffs received the Special Dividend as a consequence of their ownership of common stock in Capstead, that each stockholder received the same cash amount per share, and that Plaintiffs' income from the Special Dividend was in proportion to their fractional ownership of the share of the common stock of Capstead. The Commissioner also states that, before and after the payment of the Special Dividend, Plaintiffs were in a position to enjoy future, recurrent returns upon their Capstead stock, the Special Dividend did not reduce the number of shares held by existing shareholders, and Capstead remained a going concern after the payment of the Special Dividend. Therefore, the Commissioner contends, the Special Dividend distribution fits squarely within the definition of a taxable dividend as articulated by the Tennessee Supreme Court. We agree.

The Hall Income Tax statute in pertinent part states that a tax shall be levied on "incomes derived by way of *dividends* from stocks." Tenn. Code Ann. § 67-2-102 (2011)

(emphasis added). The statute does not define the term dividend; however, there are several Tennessee cases that specifically define "dividend" as that term is used in the Hall Income Tax statute. Our Supreme Court defined the term dividend, for purposes of determining whether a corporation's distribution constituted a return of capital, in *Gallagher v. Butler*, 378 S.W.2d 161 (Tenn. 1964) and *Dobson v. Huddleston*, 863 S.W.2d 392 (Tenn. 1993). The court stated that "[d]ividends, as ordinarily used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock." *Gallagher*, 378 S.W.2d at 167; *Dobson*, 863 S.W.2d at 396.

In line with the Supreme Court's definition of dividend, Capstead continued to be a "going concern" after the Special Dividend was distributed, Plaintiffs' proportionate share of common stocks was not reduced, and they remained in the same position as before to enjoy future returns upon their stock. These facts are confirmed by Christopher Sieber, the senior vice president of Capstead, who admitted in his deposition that the Special Dividend did not reduce the number of shares held by existing shareholders; he also testified that no assets were returned to the common stockholders other than the cash payments constituting the Special Dividend itself.

Plaintiffs also insist it is relevant and material that their percentage of stock ownership decreased due to the Special Dividend; they rely on evidence of the reverse-stock split and the mandatory conversion of the preferred shares to show a reduction in their stock percentage. We, however, are not persuaded by this argument. Plaintiffs acknowledged the reverse-stock split was not mandated by the Special Dividend. Furthermore, as Mr. Sieber admitted, the Special Dividend did not reduce the number of shares held by the existing shareholders. We acknowledge that the preferred stockholders were entitled to more common shares following the three events discussed above; nevertheless, this fact does not prove that "paid-in-capital" was *the source* of the Special Dividend.

Although Plaintiffs insist they have sufficiently proven that the Special Dividend was paid from capital, we have concluded that they have not proven that the distribution was a return of capital as distinguished from being funded by some other source or sources; thus, Plaintiffs have not carried their burden of proof. *See Fidelity-Bankers Trust Co.*, 181 S.W.2d at 750. "[T]he Legislature clearly did not intend in the administration of the law that the administrators thereof have the burden of tracing dividends to the source - the contrary is true." *Lawrence v. MacFarland*, 354 S.W.2d at 81. The burden of demonstrating that the distribution constitutes a return of capital rests with the taxpayer. Although the audit conducted by Ernst & Young regarding Capstead's financial statements are consistent with Plaintiff's arguments, there remains doubt concerning the source of the Special Dividend. As our courts have previously held, a well-founded doubt against the exemption is fatal to

the taxpayer's claim, *see United Canners, Inc. v. King*, 696 S.W.2d at 527; *see also Fidelity-Bankers Trust Co.*, 181 S.W.2d at 750, and the record here creates a well-founded doubt as to whether the Special Dividend was a return of capital. This is because the record does not establish that capital was in fact *the source* of the funds used to pay the Special Dividend.[3]

Because the source of the funds used to pay the Special Dividend is in doubt, and realizing that the burden is on the taxpayer to establish the exemption, we have concluded that Plaintiffs failed to demonstrate the Special Dividend qualifies for the distribution-of-capital exemption. Accordingly, the Special Dividend is subject to the Tennessee Hall Income Tax.

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Plaintiffs, William E. Cherry and Anne W. Cherry.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[3]Commissioner insists the source of the distribution comes from interest income and debt, specifically, interest income, mortgage principal payments and short-term borrowings; Plaintiffs, however, insist the funds came from "excess under-utilized capital," or more specifically, mortgage prepayments, which the board of directors decided to return to shareholders rather than reinvest.